IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JODY L. ARMSTRONG,         )
         )
        Plaintiff,         )
         )
         )     CIV-11-75-M
v.         )
         )
MICHAEL J. ASTRUE,         )
  Commissioner of Social Security         )
   Administration,         )
         )
        Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her concurrent applications for disability insurance and

supplemental security income benefits under Title II and Title XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues.   The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that

the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her applications for benefits on December 6, 2006. (TR 179-181, 189-

191).  Plaintiff was 43 years old when she filed her applications and 42 years old when she

allegedly became disabled on January 1, 2006.  She described previous work as an auto parts driver in 2005 and hairdresser from 1997 to 2004. (TR 197).  She stated she stopped working January 31, 2005, and that she became unable to work on January 1, 2006, due to depression and anxiety. (TR 206).

The medical record reflects that Plaintiff was treated at a hospital emergency room in November 2005 for "polysubstance abuse with anxiety." (TR 253-256).  The hospital's record reflects Plaintiff sought treatment for anxiety after smoking methamphetamine for the previous 24 hours. (TR 254).  As noted by the examining physician, Plaintiff also stated she "use[d] methamphetamine on a regular basis and ha[d] so for several years." (TR 254-255).  A physical examination and electrocardiogram and chest x-ray testing were all normal. (TR 255-256).  Plaintiff was given anti-anxiety and nausea medications and released. (TR 256).

Plaintiff was treated with medications at a hospital emergency room in January 2006 for asthma, and she was treated in July 2006 with medications for a bacterial infection on her right thigh. (TR 258-260, 261-264, 266-267, 269-270).   In July 2006, the examining physician, Dr. Hogan, noted Plaintiff's mental status was "normal" and she was going to "return to school [on] July 30, 2006." (TR 269-270).  In September 2006, Plaintiff sought treatment at a family medicine clinic, and she was prescribed medication for atypical pneumonia. (TR 291).  At that time, she reported three family members had recently died, and in October 2006 her treating physician prescribed anti-depressant and anti-anxiety medication for her complaints of depression and anxiety. (TR 291-293).  In October 2006, Plaintiff was treated for sinusitis, which she reported had kept her from attending school for

most of the previous week. (TR 294).

In November 2006, Plaintiff was treated at a hospital emergency room for a rash. She was prescribed anti-inflammatory medication. (TR 272). Later in November 2006, Plaintiff again sought emergency room treatment where she complained of chest pain associated with shortness of breath. All tests conducted at the hospital, including electrocardiogram, computerized tomographic testing, and chest x-ray, were normal, and Plaintiff was released in stable condition without medications. (TR 275-281).

Plaintiff returned to her family physician in November 2006 and stated that she had not been taking her anti-depressant and anti-anxiety medications for one to two weeks. Her medications were refilled for one month as Plaintiff reported she was scheduled to begin mental health treatment the following month. (TR 295).

In December 2006, Plaintiff sought treatment at Hope Community Mental Health Center ("Hope"), where she was initially diagnosed by a staff member, Ms. Simon, with major depression, recurrent, severe, without psychotic features. (TR 299-303). In her intake interview, Plaintiff reported previous abuse of numerous illegal substances, including cocaine, methamphetamine, and marijuana, including a twelve-year history of methamphetamine abuse. (TR 303, 306). Plaintiff denied current drug or alcohol use. (TR 306). She reported that she had experienced mild to moderate depression symptoms since her early 20's and that her symptoms became severe in the summer of 2006 after her nephew died. (TR 303). She reported she lived with her 17-year-old daughter, she saw her 22-year-old daughter frequently, she had a "wonderful" relationship with her parents, and she was

3

separated from her husband although she still spoke to him occasionally. (TR 299-303, 313, 314).

In January 2007, Plaintiff returned to her family physician and complained of a "panic attack today." (TR 317). She admitted she was not taking her prescribed anti-depressant and anti-anxiety medications. (TR 317). In February 2007, Plaintiff was evaluated by Dr. Al-Khouri at Hope. (TR 374). After interviewing Plaintiff, Dr. Al-Khouri diagnosed Plaintiff with bipolar I disorder, most recent episode mixed, with psychotic features and anxiety disorder. (TR 374). Mood stabilizing medication was prescribed. (TR 374). In March 2007, Plaintiff's mood stabilizing medication was changed and anti-anxiety medication was prescribed by Dr. Al-Khouri, who noted Plaintiff appeared anxious and irritable. (TR 373). In April 2007, Dr. Al-Khouri prescribed an anti-depressant medication, Effexor®. (TR 372). In May 2007, Plaintiff began seeing a registered nurse practitioner, Ms. Rollins, for medication management at Hope. (TR 370). In monthly appointments with Ms. Rollins in May 2007 through November 2007, Plaintiff's medications were adjusted. (TR 370, 377, 381, 382, 383, 386, 387). Ms. Rollins noted in August 2007 that Plaintiff reported her anxiety had decreased. (TR 382). In September 2007, Ms. Rollins noted that Plaintiff reported a "fairly stable" mood. (TR 381). In October 2007, Ms. Rollins noted that the dosage of Plaintiff's mood-stabilizing medication was reduced and Plaintiff's request for weight loss medication was denied. (TR 387). In November 2007, Plaintiff reported that her father had recently died and she was having anxiety problems. (TR 386). Anti-anxiety medication was prescribed. (TR 386). Plaintiff did not show up for two scheduled

appointments with Ms. Rollins in December 2007, and in February 2008, Plaintiff reported she had not been taking her prescribed medications for two to three weeks. (TR 384, 385, 398).  At her next appointment with Ms. Rollins in June 2008, Plaintiff reported she was taking her prescribed medications only sporadically.  (TR 399).  Ms. Rollins noted that the dosage of Plaintiff's anti-depressant and mood-stabilizing medications was reduced and she was advised to return in four months for a follow-up appointment. (TR 399).

Plaintiff's applications were denied initially and on reconsideration. (TR 137-140, 141-144, 148-150, 151-153).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Parrish ("ALJ") on March 19, 2008. (TR 112-130).

At her hearing, Plaintiff testified that she had been diagnosed with bipolar and anxiety disorders, that she was taking anti-depressant and anti-anxiety medications, and that she was treated on a monthly basis at Hope with medication management. (TR 115-117).  Plaintiff described "side effects" of her medications as "[c]an hardly breathe, sometimes I hear people talking to me that's not there." (TR 117).  Plaintiff stated that sometimes she was happy, sometimes she was sad, and sometimes she got angry at other people. (TR 118).  Plaintiff testified she had a large family and was typically accompanied by one or more family members when she went out in public. (TR 118-119).  Plaintiff testified she frequently cried, sometimes experienced shakiness, and sometimes developed a rash which caused her to have difficulty paying attention. (TR 120).  She stated she sometimes liked to be alone and she sometimes forgot to take her medications. (TR 121).  She also described "panic attacks" that occurred "[d]epending on how [she] feel[s]." (TR 123).  She stated that "fear" kept her from

going out in public, she "[s]ometimes" had difficulty with concentration, and she did not trust other people. (TR 124-125).  She stated she went grocery and clothes shopping and accompanied her mother to pay bills on a weekly basis. (TR 122).  She testified that her medications were helpful "most of the time" and that she  used her vocational training and previous experience as a hairdresser to cut her family members' hair occasionally. (TR 126).  A vocational expert ("VE") also testified at the hearing.

On October 1, 2008, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 105-111).  Plaintiff submitted additional medical evidence with her application for review of the decision to the Appeals Council. However, the Appeals Council refused to review the additional medical evidence because it covered treatment of Plaintiff after the date of the ALJ's decision, and the Appeals Council declined to review the ALJ's decision. (TR 1-3).  Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). Judicial review of a decision by the Commissioner in a social security case is limited to a determination of whether the Commissioner's decision is based upon substantial evidence

and whether the correct legal standards were applied. <u>Emory v. Sullivan</u>, 936 F.2d 1092, 1093 (10th Cir. 1991). In reviewing the decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hamilton v. Secretary of Health & Human Servs.</u>, 961 F.2d 1495, 1498 (10th Cir. 1992). The "determination of whether the ALJ's ruling [which becomes the Commissioner's decision] is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on March 31, 2008. (TR 194). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of [her] insured status" on March 31, 2008. <u>Potter v. Secretary of Health & Human Servs.</u>, 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); <u>accord</u>, <u>Adams v. Chater</u>, 93 F.2d 712, 714 (10th Cir. 1996); <u>Henrie v. United States Dep't of Health & Human Servs.</u>, 13 F.3d 359, 360 (10th Cir. 1993).

III. <u>ALJ's Decision, Plaintiff's Claims, and Commissioner's Responses</u>

Following the requisite sequential analysis, the ALJ found at steps one and two that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2008, that she had not worked since her alleged disability onset date of January 1, 2006, and that she had a severe impairment due to bipolar disorder. (TR 107). At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment deemed disabling *per se* under the agency's Listing of Impairments. (TR 107-108).  In connection with this finding, the ALJ  considered the functional limitations resulting from Plaintiff's severe mental impairment.  See 20 C.F.R. § 404.1520a, 416.920a.  Based on reasoning set forth in the decision drawn from Plaintiff's testimony and the medical record, the ALJ found that Plaintiff experienced moderate restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (TR 108).  At step four, the ALJ found that despite Plaintiff's severe impairment and resulting functional restrictions, she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels so long as she was allowed to "work in relative isolation with limited contact with peers and supervisors" and the work was limited to the performance of "simple, unskilled 1-2 step repetitive tasks." (TR 108-109).  In light of this finding and Plaintiff's description of her previous jobs as well as the VE's testimony, the ALJ found that Plaintiff did not retain the capacity to perform her previous jobs. (TR 109-110).   However, the ALJ found at step five that Plaintiff was not disabled within the meaning of the Social Security Act because she retained the capacity to perform other jobs available in the economy, including the jobs of touch-up screener, bench assembler, and press machine operator. (TR 110-111).

Plaintiff contends that the ALJ erred by failing to discuss specific probative evidence and by failing to adequately analyze the medical opinions of Plaintiff's treating psychiatrist and other medical sources.  Secondly, Plaintiff contends that the ALJ erred in finding that

her testimony concerning her impairments was not credible and in failing to provide an adequate explanation for the credibility decision. Finally, Plaintiff contends that there was not substantial evidence to support the ALJ's step five decision because the ALJ failed to ascertain whether the VE's testimony was consistent with the United States Department of Labor's Dictionary of Occupational Titles ("DOT") as required by Haddock v. Apfel, 196 F.3d 1084, 1089 (10th Cir. 1999), and Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009), and failed to resolve an inconsistency between the VE's testimony and the DOT.

Defendant Commissioner contends that no error occurred in the ALJ's evaluation of the evidence and that substantial evidence supports the decision denying Plaintiff's applications for benefits.

IV. Evaluation of the Evidence

Plaintiff contends that in determining Plaintiff's RFC for work the ALJ ignored or did not discuss significantly probative evidence in the record. Plaintiff points to a Client Assessment Record and Recovery Plan included in the record. These documents bear the date of December 19, 2006, and indicate they were completed by one or more unidentified staff members at Hope at the time Plaintiff initially sought mental health treatment at the clinic. (TR 299-302). Plaintiff also points to a second Client Assessment Record completed at the clinic. This document indicates it was completed by an unidentified staff member at Hope on February 26, 2007. (TR 351-352). These records include numerical ratings that Plaintiff contends provide significantly probative evidence of the severity of Plaintiff's mental impairments because the ratings assess Plaintiff's functional limitations in various

9

domains, including thinking/mental process, substance abuse, medical/physical, family, interpersonal, social/legal, and self-care/basic needs. (TR 301-302, 351-352).

Assuming, as Plaintiff suggests, that the two Client Assessment Records were completed by non-acceptable medical sources, the regulations allow non-acceptable medical sources[1] to opine as to the "severity" of a diagnosed impairment, once the impairment has been established by an acceptable medical source. 20 C.F.R. §§ 404.1513(d), 416.913(d). In this case, however, there is nothing in the record to show that these unidentified staff members had a lengthy relationship with Plaintiff or were mental health professionals capable of presenting relevant evidence concerning Plaintiff's impairment or her ability to work.   In essence, there is nothing to indicate that these Client Assessment Records constituted material or reliable opinions by medical sources or non-medical sources.   The records set forth only Plaintiff's subjective statements and contain an insufficient explanation for the numerical ratings purportedly made by the staff members.  Thus, the ALJ did not err by failing to expressly consider the two Client Assessment Records in determining the severity of Plaintiff's mental impairment or Plaintiff's RFC for work.

Plaintiff also points to a GAF rating of 51 included in a Recovery Plan prepared by a Hope staff member during Plaintiff's intake interview in December 2006. (TR 299).  Even assuming that this GAF rating was significantly probative evidence, the ALJ did not err in

---

[1]A non-acceptable medical source is described as in the regulation as"[m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)." 20 C.F.R. §§ 404.1513(d)(1). 416.913(d)(1).

failing to discuss the rating because the rating was not inconsistent with the ALJ's RFC determination.

Plaintiff contents that the ALJ failed to properly consider the medical opinion of Dr. Al-Khouri.  A treating source opinion must be given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record . . . ." 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2).  The ALJ's decision contains a brief reference to Plaintiff's mental health treatment at Hope beginning in December 2006.  The ALJ did not specifically address Dr. Al-Khouri's report of his February 2007 initial psychiatric evaluation of Plaintiff. However, the ALJ found that Plaintiff had a severe impairment due to bipolar disorder, and Dr. Al-Khouri diagnosed Plaintiff with bipolar disorder in February 2007 and indicated that her then-current level of functioning, as expressed under the Global Assessment Function [GAF] scale, was 45.  (TR 374).  A GAF rating of 45 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)Dr. Al-Khouri noted that in a mental status examination conducted during the psychiatric evaluation Plaintiff exhibited intact memory, decreased attention and concentration, and poor insight and judgment, average intellect, and an anxious, irritable, and depressed mood. However, Dr. Al-Khouri did not opine that Plaintiff was unable to work or that her impairment was so severe that her ability to work was restricted in any manner.  Consistent with Dr. Al-Khouri's report, the ALJ found that Plaintiff's bipolar impairment had resulted in moderate restrictions

11

245030972ea855d1

in her ability to concentrate as well as moderate restrictions in her activities of daily living and social functioning.  Under these circumstances, the ALJ's failure to expressly discuss the one-time GAF rating was not error.

Plaintiff argues that the ALJ failed to discuss the medications prescribed for Plaintiff or the changes in prescribed medications or side effects of medications prescribed for Plaintiff during Plaintiff's treatment at Hope in 2007 and 2008.  Plaintiff does not suggest, however, that either Plaintiff's medications or medication side effects precluded Plaintiff from performing any work.  No mental health professional opined that Plaintiff was not capable of working.  Her treatment records indicate she received treatment in the form of medication management without therapy at Hope for approximately one and a half years.  Her medication management was largely conducted by a nurse practitioner.  The record of her treatment at Hope reflects that Plaintiff sometimes failed to show up for appointments and admitted on more than one occasion that she had not been compliant with her prescribed medications.  Moreover, the record of Plaintiff's treatment at Hope indicates that by September 2007 Plaintiff's symptoms had decreased and her mood was "fairly stable," and that by February 2008 she was scheduled to return for follow-up medication management only every four months.  Because Plaintiff's treatment record at Hope supports the ALJ's finding that Plaintiff retained the RFC to perform a limited range of work, the ALJ did not err in failing to expressly discuss Plaintiff's treatment record at Hope.

V. <u>Credibility</u>

Plaintiff contends that the ALJ's credibility determination was flawed.  "Credibility

determinations are peculiarly the province of the finder of fact," and credibility determinations will not be upset "when supported by substantial evidence. Nevertheless, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted). The ALJ found in his decision that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were only partially credible. (TR 109). Although the ALJ's explanation of his credibility determination was brief, the decision adequately links the credibility determination to evidence in the record. The ALJ did not merely rely on "boilerplate language" in the decision. Cf. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004)(noting that ALJ's use of "boilerplate paragraph is insufficient, in the absence of a more thorough analysis, to support an ALJ's credibility determination"). Rather, the ALJ referred to Plaintiff's statements concerning her usual daily activities and the record of her medical treatment at Hope. This is not a "boilerplate, conclusory statement about a lack of medication and a lack of treatment," as was the case in Hardman, supra at 680. The ALJ simply explained that Plaintiff's statements of severe, disabling symptoms were disproportionate with her account of her usual daily activities and the medical record. Because the ALJ's credibility determination is well supported by the record, it should not be disturbed.

VI. Step Five

Plaintiff contends that there is not substantial evidence to support the ALJ's step five

13

determination.   Specifically, Plaintiff contends that the ALJ erred in failing to ascertain during the hearing whether the VE's testimony was consistent with job information set forth in the DOT.  See Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999), and Social Security Ruling 00-4p, 2000 WL 1898704.   During the hearing, the ALJ sought information concerning job availability by posing a hypothetical inquiry to the VE which included Plaintiff's vocational characteristics and her RFC. (TR 128).  In response to this questioning, the VE identified jobs that such an individual could perform, including the jobs of touch up screener, bench assembler, and press machine operator. (TR 129).  The VE testified that each of these jobs carried an SVP, or specific vocational preparation, of 2. (TR 129).  The ALJ relied on this testimony in finding that Plaintiff was not disabled at step five.  Citing the VE's testimony at the hearing, the ALJ found at step five that Plaintiff retained the ability to perform other available work within her RFC and therefore she was not disabled.

The DOT describes the exertional and nonexertional capabilities required by each job identified in the DOT.  As explained in Social Security Ruling 00-4p, 2000 WL 1898704, "[t]he DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in [the regulations], unskilled work corresponds to an SVP of 1-2 . . . ."  Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

Although the ALJ did not expressly ask the VE about any conflicts between the VE's testimony regarding available jobs and the descriptions of those jobs in the DOT, it is

obvious that the VE considered the DOT's job descriptions.  Thus, the ALJ did not err in

failing to inquire about possible conflicts.  Although Plaintiff argues that such a conflict

existed because an SVP of 2 does not coincide with the ALJ's finding that Plaintiff was

capable of performing jobs requiring only simple, unskilled, 1 to 2 step repetitive tasks, the

VE clearly considered the DOT's job descriptions in light of the ALJ's RFC finding.

Plaintiff points to no precedent for her conclusory assertion that a conflict existed.  In the

only case cited by Plaintiff, Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005), the Tenth

Circuit Court of Appeals stated that an RFC limitation for work requiring only "simple and

routine work tasks" was not consistent with the demands of level-three SVP reasoning. Id.

at 1176. The circuit explained that level-two reasoning "appear[ed] more consistent with

Plaintiff's RFC." Id.   The hypothetical questions posed to the VE "provided a proper basis

for the ALJ's disability decision." Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000).

There is substantial evidence in the record supporting the Commissioner's decision,

and therefore the decision should be affirmed.


RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits.

The parties are advised of their respective right to file an objection to this Report and

Recommendation with the Clerk of this Court on or before _____ December 28th _____,

2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely

15

object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____8th_____ day of _____December_____, 2011.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE